JOHN TRENWITH, PLAINTIFF IN ERROR, v. MICHAEL GILVERY, DEFENDANT IN ERROR.

1. In an action for damages for breach of a covenant to move "Mammoth Swings" to lands of the defendant, and lease the lands to be occupied thereby—the payment of the costs and expenses of removal to be secured by chattel mortgage on the swings—it is no defence to such action that at the time of the agreement the plaintiff did not own the swings, but the title was in his wife, or that the plaintiff had employed another to move the swings, if the defendant was not hindered, deceived or injured thereby. He could only rescind by showing fraud; and could not require security before performance, and the costs and expenses ascertained.

2. Full compensatory damages may be given, if by defendant's breach the plaintiff was obliged to take the swings apart and sell them at a loss.

By a contract in writing, dated December 8th, 1885, Michael Gilvery released all claim of action and compromised a suit of law against John Trenwith for the sum of $500, and (it was therein set forth) " the said John Trenwith hereby agrees to remove from the place where they now stand, at the option of the said Michael Gilvery, the property of said Michael Gilvery known as the ' Mammoth Swings,' and to erect them in good order upon the grounds of the Sea View Excursion House, at Atlantic City, New Jersey, adjoining Philip Mulligan's show, towards the hotel, and to pay all costs and expenses incurred in so doing, which said costs and expenses the said Michael Gilvery agrees to repay to the said John Trenwith within two years from the date of these presents ; and in default thereof, agrees that they, the ' Mammoth Swings,' shall become, and shall henceforth be, the sole and exclusive property of the said John Trenwith ; and further to secure the payment of the said costs and expenses, the said Michael Gilvery hereby agrees to make and execute unto the said John Trenwith, whenever said payments are made, a chattel mortgage upon said ' Mammoth Swings' for the amount of said costs and expenses, payable in two years from the date hereof, which chattel mortgage shall be a first lien on said swings," &c.

There was also to be a lease given for two years, free of rent, of the ground occupied by the swings, for the purpose of conducting and carrying on the business of the " Mammoth Swings," with a privilege of renewal during Trenwith's extended term, if obtained, for a rent agreed upon.

The defendant, John Trenwith, did not remove the swings. Gilvery employed one Rufus Booye to remove them.    Trenwith stopped Booye, after the swings had been raised and blocked, ready for removal.   The swings were taken down and sold by Gilvery, because he had no place to remove them, and this suit was brought against Trenwith for damages.   Trenwith's apparent defence, on which he relied, was that at the time of the agreement the title of the swings was in Gilvery's wife's name, and the statement in the agreement that the swings were the property of Gilvery was not true ; and that

he was not in position to secure the payment of the costs and expenses of removal by a chattel mortgage, because the swings were not his. It appeared that while Gilvery had, by the interposition of a third person, caused the swings to be conveyed to his wife by bill of sale, yet he was the real owner, and his wife, when Trenwith raised the objection, promised to execute the chattel mortgage, and she subsequently reconveyed the property to her husband. The verdict and judgment were for the plaintiff; and the defendant by writ of error brings up the record and bill of exceptions.

Argued at June Term, 1887, before BEASLEY, CHIEF JUS- TICE, and Justices SCUDDER, DIXON and REED.

For the plaintiff in error, *Charles G. Garrison.*

For the defendants in error, *S. E. Perry* and *D. J. Pancoast.*

The opinion of the court was delivered by

SCUDDER, J. The first error assigned is that the court refused to nonsuit the plaintiff. The grounds of the motion for nonsuit were the representation in the agreement that the swings belonged to the plaintiff, which was material to the defendant; that the matter was within the plaintiff's knowledge, and the defendant had the right to rely on his representation; that the defendant's refusal to remove proceeded from this ownership of Mrs. Gilvery, of which he gave plaintiff notice. Also, because before the said Michael Gilvery exercised the option of removal, and requested the defendant to remove the swings, he had contracted with Booye to remove them, and he had commenced the removal to defendant's land; and further, because he did not tender a mortgage nor get title and notify the defendant that his objection had been removed, and because the plaintiff by his conduct had put his swings in such a condition that when he notified the defendant to remove them he could not do it without rendering himself liable to an action at law by Mrs. Gilvery, the legal

owner, and by Rufus Booye, who had begun the removal, expended labor on the swings, and had possession, and a claim in the nature of a lien for the work done by agreement.

There was evidence tending to show that Trenwith knew that the title was in the wife, but that Gilvery was the real owner, and of her willingness to execute a mortgage when the removal was made and the cost and expenses ascertained, and that Booye was employed to hasten the removal; but Trenwith refused to permit the swings to be removed across or on his land. The court refused to nonsuit, and the reasons appear in the charge to the jury, which was subsequently given. It was charged, in substance, that Trenwith was bound to remove the swings, under his covenant; that Gilvery's covenant to give a chattel mortgage to secure the costs and expenses of removal was an independent covenant, and he was to give it after Trenwith had made the expenditure for removal, and the amount was ascertained; and if Gilvery, at that time, was not in a position to perform his covenant, and did not perform it, Trenwith's remedy was an action for the breach; and that Gilvery had until that time to prepare the security agreed for.

There was no error in this part of the charge, or in the refusal to nonsuit.

As to the representation in the agreement that the swings were the property of Gilvery, the court said whether this was merely a matter of description of the swings which Trenwith was to remove, or this assertion was intended to induce Trenwith to enter into the contract, and whether it was material and influential in procuring the contract, through fraudulent representation, was a question for the jury. If he made a false representation, and the contract was executed by reason of it, the defendant had a right to rescind as soon as it came to his knowledge. If he had the right to rescind, he was bound to exercise it promptly, when he could place the party *in statu quo*. It appears in the agreement that the removal of the swings and the occupancy of other land by them for two years, without rent, as well as the $500 in money, were

parts of the consideration to be given by Trenwith in settlement of the suit Gilvery had brought against him, and for the full release and quit-claim of all demands. The $500 were paid, but the other parts of the contract were not performed by Trenwith, for the reasons above given.

In the requests to charge, the other important matter on the question of non-performance, is that the court was asked to say that Trenwith was absolved from performing his contract because Gilvery made a prior contract with another, Rufus Booye, to remove the swings, as has been stated, and that he was not obliged to employ Booye, or any person of Gilvery's selection. There would be force in this position if it appeared that this was the point of Trenwith's objection to perform; but he did not object to Booye and his contract, but to the removal of the swings to his land, and the fact that Mrs. Gilvery owned the swings. As Trenwith was to pay for the costs and expenses of the removal of the swings, it was evidently intended by the plaintiff that Booye should act for both, and be paid by the defendant. If the defendant objected to him and the terms of his engagement, he could do so, but he did not. There is no apparent reason to believe that the contract with Booye in any way interfered with the performance of his covenant by Trenwith. He made no effort to remove the swings, and was not hindered by Booye.

The assignment of error as to damages, and refusal to charge that the jury could not give damages for the destruction or loss of property, and only such as the plaintiff had suffered from the defendant, at the time of the destruction of the swings and only up to that time, is not well founded. On April 1st, 1886, the plaintiff gave notice by his attorney to the defendant to remove the swings and erect them according to contract; that he was willing and able to perform on his part; that they were dangerous to themselves and to the property of others; and if he failed to comply with that notification and request, he would be held responsible for all damages resulting therefrom. By bills of sale of that date the swings were reconveyed by Mrs. Gilvery to her husband, in the same

manner that the original transfer was made from him to her. On March 25th, 1886, by a written notice from the defendant's attorneys, Booye was forbidden to remove the swings on the Sea View Excursion property, and was told if Mr. Gilvery advised him to continue with the moving to tell him that Trenwith's attorneys forbade him, and referred him to them. The plaintiff testifies that they were dangerous as they were; that they were stopped; that Trenwith wanted the ground, and having no place to which he could move them, he took them apart and sold them at a great loss. The court left the jury to determine the damages, after calling their attention to the notice of the defendant's attorneys, and the effect of its interpretation, as the respective counsel of the plaintiff and defendant construed it, and refused to charge directly on the fact, as the defendant's counsel requested.

The other alleged errors are contained, in effect and substance, in those above considered, and we find no error in the refusal of the motion to nonsuit, or denial of the requests to charge.

The amount of damages we have not considered, as the evidence on this part of the case can only be reviewed on rule to show cause for new trial. We find no error in the causes assigned, and the judgment will be affirmed.